UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OSAMAH MOHAMMAD YACOUB, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-25-5713 |
| | § | |
| KRISTIE NOEM, Secretary, U.S. Department of Homeland Security, *et al.*, | § | |
| | § | |
| Respondents. | § | |

**ORDER**

The petitioner, Osamah Mohammed Yacoub, is a detainee in the custody of United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") at the Houston Contract Detention Facility in Houston, Texas. Yacoub is a self-identified stateless Palestinian. (Docket Entry No. 1 at 5). He holds a Jordanian passport, but efforts to remove him to Jordan have not succeeded. In July 2005, an Immigration Judge issued an order of removal that denied all relief from removal and ordered that Yacoub be removed to Israel or the West Bank. (*Id.*). The government could not effect Yacoub's removal, so it released him in March 2006. (*Id.*). Although Yacoub committed several crimes before his 2005 removal proceedings, the government does not identify any criminal acts since his 2006 release. (*See* Docket Entry No. 5-1).

In June 2025, ICE took Yacoub into custody to deport him from the United States. (Docket Entry No. 1 at 6). The government sought to remove him to Jordan, but it has not yet obtained travel documents for him. (Docket Entry No. 5-1 at 4–5). He has been detained since then. Through counsel, Yacoub filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his continued detention pending his removal under his 2005 final removal order. (Docket Entry No. 1). He alleges violations of his due-process rights and violations of the

Immigration and Nationality Act. (*Id.* at 6–9). He requests that the court issue a writ of habeas corpus ordering the respondents to release him. (*Id.* at 9–10).

This case presents one of the many immigration-detention issues recurring in the federal courts under the current Administration: whether the government may re-detain noncitizens who are subject to a final removal order but have been previously released from custody, for the government's failure to timely deport them. The dispositive questions are whether there is a "significant likelihood that the noncitizen will be removed in the reasonably foreseeable future" and whether "special circumstances justify continued detention." *Yee S. v. Bondi*, __ F. Supp. 3d ____, 2025 WL 2879479, at *3 (D. Minn. Oct. 9, 2025) (citing 8 C.F.R. § 241.13(g)). After an individual has been released under Section 241.13, the government may revoke that release for a violation of the conditions of release or changed circumstances. *Id.* at *4 (citing 8 C.F.R. § 241.13(i)(2)). When, as here, the government has detained a noncitizen who it previously released from custody despite a final removal order, the "regulations place the burden on ICE to establish that 'changed circumstances' justified the revocation of release." *Id.*; *accord Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 & n.2 (D. Mass. 2025); *Escalante v. Noem*, No. 9:25-CV-00182, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *Roble v. Bondi*, ___ F. Supp. 3d ___, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025).[1]

---

[1] Another court in this district has ruled that the petitioner must establish a prima facie case under the relevant regulations. *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025). This court respectfully disagrees, for two reasons. First, the regulation places the burden on the government. The *Abuelhawa* court relied on the fact that the scope of the regulation makes it active only when a noncitizen has provided good reason to believe there is no significant likelihood of removal. *See id.* (citing 8 C.F.R. § 241.13(a)). But once a noncitizen is released, the regulations permit revocation of that release if "the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The government must make the revocation determination, *id.*, establish a basis for that determination, *see id.* § 241.13(i)(3), and defend that determination in subsequent review, *id.* The revocation procedures place the burden on the government. Second, the "default rule" is that the party seeking "to change the present state of affairs" must "bear the risk of failure of proof or persuasion." *Roble*, 2025 WL 2443453, at *4 (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)). In this case, the status quo is the petitioner's "release on terms of

The case law has identified when in the removal timeline the likelihood of deportation is too uncertain to justify continued detention for noncitizens in Yacoub's position. The government "fails to meet its burden where it provides only conclusory statements as to the likelihood of removal." *Abuelhawa*, 2025 WL 2937692, at *9. If "[t]ravel documents are still 'pending,'" continued detention is not justified. *Balouch v. Bondi*, No. 9:25-CV-216-MJT, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025); *see, e.g.*, *Abuelhawa*, 2025 WL 2937692, at *9–10 (granting relief because the government failed to show it had secured or was likely to secure necessary travel documents); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (similar); *Roble*, 2025 WL 2443453, at *5 (similar); *Nguyen*, 788 F. Supp. 3d at 152 (similar). By contrast, removal is significantly likely if the government can show that travel documents have been approved, *see, e.g.*, *Piao v. Lyons*, No. 1:25-CV-1725, 2025 WL 3046783, at *3 (E.D. Va. Oct. 31, 2025); *Tawfik v. Garland*, No. CV H-24-2823, 2024 WL 4534747, at *4 (S.D. Tex. Oct. 21, 2024), or that "that the receiving nations ha[ve] accepted similarly situated detainees in the past," *Abuelhawa*, 2025 WL 2937692, at *9; *see, e.g.*, *Salim v. Sessions*, No. H-18-2287, 2019 WL 13218806, at *5 (S.D. Tex. Sept. 4, 2019) (citing government declaration of removal "in the past and in similar cases"); *Apau v. Ashcroft*, No. 3:02-CV-2652-D, 2003 WL 21801154, at *3 (N.D. Tex. June 17, 2003) (similar); *Nagib v. Gonzales*, No. 3:06-CV-0294-G, 2006 WL 1499682, at *2 (N.D. Tex. May 31, 2006) (similar); *Diaz-Ortega v. Lund*, No. 1:19-CV-670-P, 2019 WL 6003485, at *14 (W.D. La. Oct. 15, 2019) (similar), *report and recommendation adopted*, No. 1:19-CV-670-P, 2019 WL 6037220 (W.D. La. Nov. 13, 2019).

In this case, the government has failed to show a "significant likelihood that" Yacoub "will

---

supervision." *Abuelhawa*, 2025 WL 2937692, at *7. The government is seeking to change the status quo "by re-detaining" the petitioner. *Roble*, 2025 WL 2443453, at *4. As a result, the government must demonstrate why the law permits the petitioner's detention.

3

be removed in the reasonably foreseeable future" or that "special circumstances justify continued detention." *Yee S.*, 2025 WL 2879479, at *3. The government's request for Yacoub's travel documents is "still pending" with Jordanian officials. (Docket Entry No. 5-1 at 5). The government has not identified additional facts showing that Jordan is likely to accept Yacoub. The government represents that it has removed over 200 people to Jordan in the past two years. (*Id.* at 4). But there is no evidence that these individuals are "similarly situated" to Yacoub, a stateless Palestinian who is Jordanian by geopolitical technicality. *Abuelhawa*, 2025 WL 2937692, at *9. The government has not provided or pointed to evidence "that the identified, potential receiving nations or territories (Israel, Jordan, or Palestine) have accepted a single Palestinian detainee at any recent time." *Id.* at *10. Nor is there "evidence of any cooperation or response to the many travel documents requests sent by the Government." *Id.* The government's bare assertion that Jordan received its request for travel documents and that the matter is pending is insufficient at this stage of Yacoub's removal proceedings to justify his continued detention. "Suggestion of return in the reasonably foreseeable future of a Palestinian national to any of Jordan, Israel, or a Palestinian territory is objectively specious, especially where the record includes" a failure to remove Yacoub in the past twenty years, "in times of less strife." *Id.* at *8.[2]

After determining that the government has improperly re-detained a noncitizen subject to removal, courts order the noncitizen's "release from custody as a remedy for ICE's illegal re-detention." *Roble*, 2025 WL 2443453, at *5 (collecting cases). Courts have declined to enter additional injunctive relief "restricting ICE's ability to re-detain [a petitioner] at some point in the future," because the chance that ICE will again illegally re-detain a petitioner is too speculative to

---

[2] The government does not argue that Yacoub's criminal history alone justifies his detention. (Docket Entry No. 5-1 at 3–6). Nor could it. The government does not identify criminal activity after Yacoub's release in 2006. His criminal history is not a changed circumstance that justifies release revocation.

justify such relief.  *See id.*  This court follows their lead and orders the respondents to promptly release Yacoub from detention, no later than December 25, 2025.[3]

In conclusion, Yacoub's petition, (Docket Entry No. 1), is granted in part.  The respondents must release Yacoub from detention no later than December 25, 2025, and reinstate his previous Order of Supervision.  "For avoidance of doubt, while [Yacoub] remains on supervised release, nothing prevents [r]espondents from re-detaining and removing him if proper travel documents are secured and there is a significant likelihood of his removal to Israel, Jordan, a Palestinian territory, or an alternative third country after the proper evaluation of any credible fear claim has been made per the applicable regulations."  *Abuelhawa*, 2025 WL 2937692, at *12.  But until those proper travel documents are secured and there is a significant likelihood of his removal to a country after the proper evaluation of any credible fear claim that has been made, there is no legal basis to continue to detain Yacoub.  He must be released.

SIGNED on December 23, 2025, at Houston, Texas.

                                                                         _____
                                                                                  Lee H. Rosenthal
                                                                         Senior United States District Judge

---

[3] The court denies Yacoub's request for attorney's fees because "the EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions."  *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023).